**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TECHNOMEDIA SOLUTIONS, LLC,   )
                                    )
           Plaintiff,         )   CASE NO.: 6:13-cv-01061-CEH-GJK
                                    )
-vs-                               )
                                    )
MORGAN SCOPETTO,           )
                                    )
           Defendant.      )
_____  )

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND**
**INCORPORATED MEMORANDUM OF LAW**

COMES NOW Plaintiff TECHNOMEDIA SOLUTIONS, LLC ("TECHNOMEDIA"), by and through its undersigned counsel, and, pursuant to Fed. R. Civ. P. 65(a) and Local Rule 4.06, hereby files its Motion for Preliminary Injunction ("Motion") against Defendant MORGAN SCOPETTO ("SCOPETTO") and its Incorporated Memorandum of Law and alleges:

1.      Plaintiff TECHNOMEDIA has filed its Complaint and contemporaneously herewith files the Affidavit of John Miceli in support of its Motion.

2.      Plaintiff TECHNOMEDIA alleges a breach of contract claim for which injunctive relief is proper.

3.      Plaintiff TECHNOMEDIA is a global provider of sophisticated integrated audio and visual solutions and media content.  As a result of years of effort and at considerable expense, TECHNOMEDIA has established contacts, business relationships and goodwill with many clients seeking such services.

4.      Defendant SCOPETTO, a former Vice President of Business Development for TECHNOMEDIA, has violated the terms and conditions of a Confidentiality and Non-Compete Agreement that she entered into on October 25, 2011 (the "Agreement"; attached hereto as Exhibit "A"), by soliciting business from numerous existing and prospective clients of TECHNOMEDIA after resigning from TECHNOMEDIA and accepting a position with TECHNOMEDIA's largest competitor, Electrosonic, Inc. ("Electrosonic").

5.      Plaintiff TECHNOMEDIA is entitled to a preliminary injunction to prevent Defendant SCOPETTO from continuing to violate the Agreement causing irreparable harm to TECHNOMEDIA's substantial relationships and goodwill it has formed and maintained with its existing and prospective clients that Defendant SCOPETTO is seeking to undermine.

6.      All of the factors under Fed. R. Civ. P. 65(a) and Local Rule 4.06 to be considered in granting a preliminary injunction have been satisfied.    Plaintiff TECHNOMEDIA has established a substantial likelihood of success on the merits of its breach of contract claim.   Plaintiff TECHNOMEDIA will suffer irreparable harm absent injunctive relief.   The balancing of hardships weighs in favor of granting Plaintiff the preliminary injunction.  The public interest favors granting injunctive relief.  Only a minimal bond, if any, is necessary to protect Defendant SCOPETTO's interests.

7.      Plaintiff requests that if the Court does not grant a preliminary injunction on the papers, that an expedited hearing be set so that the issues presented herein may be resolved at the earliest possible opportunity.

WHEREFORE, Plaintiff TECHNOMEDIA SOLUTIONS, LLC prays this Honorable Court will grant its Motion for Preliminary Injunction and issue the proposed order

2

restraining Defendant SCOPETTO from further unlawful conduct and prevent her from continuing to undermine and damage TECHNOMEDIA's legitimate business interests, together with such other and further relief as this Court deems just and proper.

## INCORPORATED MEMORANDUM OF LAW

### I.     FACTUAL BACKGROUND

Founded in 2001, TECHNOMEDIA designs and provides sophisticated integrated audio and visual solutions and media content for customers.  *See* Affidavit of John Miceli, ¶ 3 ("Miceli Aff.") (filed contemporaneously herewith).   Services provided by TECHNOMEDIA include the following: audio, video, lighting and control design, consulting, integration, engineering and programming; audio and video preventative maintenance; video and film production and post-production; audio post production and editorial services; and interactive content development.   (Miceli Aff., ¶ 4). TECHNOMEDIA provides these services to customers located throughout the United States and overseas.  (Miceli Aff., ¶ 5).  TECHNOMEDIA has provided audiovisual services to a commercially and geographically diverse clientele including, but not limited to, Universal Studios, Hard Rock Café International, Time Warner, Turner Construction, Forrec, Shawmut Design & Construction, David Mexico Design Group, Walt Disney Imagineering, the Nassal Company, Lexington Design & Fabrication, International Speedway Corporation, Jack Rouse Associates, Centerplate, Gensler, Rockwell Architecture, Gary Goddard Entertainment, Ripley Entertainment, Hnedak Bobo Group, Friedmutter Group, Jones Lang LaSalle, and Lee H. Skolnick Architecture & Design.  *Id.*  The revenue over the years to TECHNOMEDIA from these client relationships has totaled tens of millions of dollars.  *Id.*  In the past three

3

years, TECHNOMEDIA has spent significant amounts of time and money creating commercial goodwill and cultivating prospective business relationships with potential clients including, but not limited to, Marriott Vacation Club, Columbia University, Mace North America, Carnival Cruise Lines, Cumming Corporation, Acquario Cearo, International Concept Management, Avila Group, B&G Electrical, Adco Electrical, Holt Construction, Balfour Beatty Construction, Barton Malow Company, Kostow Greenwood Architects, Stonehill &Taylor, Stys Hospitality, and Structure Tone.  (Miceli Aff., ¶ 6).

Defendant SCOPETTO, who was Vice President of Business Development for TECHNOMEDIA until her resignation on June 14, 2013, was heavily involved in soliciting, marketing and generating business from the existing and prospective TECHNOMEDIA client relationships set forth above.  (Miceli Aff., ¶ 7).  SCOPETTO was originally hired by TECHNOMEDIA in May 2008 as a sales account manager reporting directly to its President, John Miceli.  (Miceli Aff., ¶ 8).  Her job was to generate sales and develop business for TECHNOMEDIA.  *Id.*  Prior to her employment with TECHNOMEDIA, Defendant SCOPETTO had no previous experience marketing audiovisual services, nor did she possess any technical expertise in this field.  *Id.*  As a condition of her employment, SCOPETTO entered into a Non-Compete & Confidentiality Agreement on May 19, 2008, wherein she promised not to disclose TECHNOMEDIA's proprietary and confidential information, or solicit TECHNOMEDIA's prospective or existing clients for her sole benefit or the benefit of others.  *Id.*  Because of her inexperience, TECHNOMEDIA spent a considerable amount of time and money to educate SCOPETTO and acclimate her to the audiovisual services industry.  (Miceli Aff., ¶ 9).  Specifically, Mr. Miceli personally mentored Defendant

BDH 552611 v2
2926977-000001

SCOPETTO during her first three years at TECHNOMEDIA by providing continuous verbal direction and guidance. (Miceli Aff., ¶ 10). This included the preparation of all of SCOPETTO's marketing and presentation materials for her until she was eventually able to do so independently. *Id.* During her employment by TECHNOMEDIA, Defendant SCOPETTO spent hundreds of hours with TECHNOMEDIA's Estimating Department learning its proprietary process of preparing proposals, devising pricing strategies, adjusting to industry benchmarks, and engaging in high level pricing analysis. (Miceli Aff., ¶ 11). SCOPETTO's responsibilities as she gradually learned TECHNOMEDIA's business came to involve identifying specific sales opportunities. (Miceli Aff., ¶ 12). She did so by building upon TECHNOMEDIA's existing relationships, conducting industry research, and making preliminary inquiries to qualify leads and networking. *Id.*

In December 2010, TECHNOMEDIA promoted SCOPETTO to Director of New Business Development. (Miceli Aff., ¶ 14). In this position, she was tasked with increasing and diversifying the revenue attributable to new business. *Id.* Her focus became creating opportunities through relationship development and targeted marketing of new prospects. *Id.* SCOPETTO was responsible for researching, identifying, and qualifying new clients, markets and opportunities for TECHNOMEDIA and its affiliated business units. *Id.* Much of her time was spent in the development and nurturing of customer relationships from their inception in an effort to secure new and future work for TECHNOMEDIA. *Id.* In less than a year later, however, SCOPETTO announced she had decided to leave Orlando to accept a job in Boston, Massachusetts with a construction general contractor. (Miceli Aff., ¶ 15). Within two months of her departure, SCOPETTO grew dissatisfied with her new job in

5

Boston and sought to be rehired by TECHNOMEDIA.  *Id.*  TECHNOMEDIA did not have a Boston office, but SCOPETTO requested that she be allowed to remain in Boston.  *Id.* From her home in Boston, SCOPETTO suggested she could support TECHNOMEDIA's Northeast Market, which consisted primarily of its established New York office.  *Id.*  Once again, TECHNOMEDIA agreed to accommodate SCOPETTO, and she was rehired in the role of Vice President of Business Development.  *Id.*  As a condition of her rehiring, SCOPETTO executed on October 25, 2011, a Confidentiality and Non-Compete Agreement (the "Agreement") similar to the one she'd previously executed when she was first hired in 2008.  (Miceli Aff., ¶ 16).

In her position as Vice President of Business Development, SCOPETTO had ready and complete access to TECHNOMEDIA's trade secrets and proprietary information in the form of solutions, processes, methods, and procedures developed and used by TECHNOMEDIA which were not otherwise readily accessible to competitors, third parties, and even a significant portion of TECHNOMEDIA's staff.  (Miceli Aff., ¶ 20).  In addition to the technical  knowledge required to create its unique audio visual effects and solutions, TECHNOMEDIA developed considerable information on likely prospects and existing customers.  *Id.*  That information allowed it to continuously and successfully market and price its products to those prospective customers.  *Id.*  Persons outside of TECHNOMEDIA had no access to either that information nor the methods by which TECHNOMEDIA uses it to successfully grow and sustain its business (the "Confidential and Propriety Information").  *Id.*  Defendant SCOPETTO did have such access.  *Id.*  In order to protect this Confidential and Proprietary Information, TECHNOMEDIA has implemented the following policies and

procedures: (a) the creation of security groups within TECHNOMEDIA's network to limit access to sales and marketing data to a very limited group of trusted employees who have a "need to know"; (b) the use of passwords to protect data contained within TECHNOMEDIA's Customer Relationship Management software; (c) all employees, subcontractors, and third parties involved in discussions for collaboration on a proposal or project are required to sign non-disclosure agreements.  (Miceli Aff., ¶ 21).

By signing the Agreement, SCOPETTO acknowledged and represented that she would not "disclose or transfer, directly or indirectly, to any person, firm or entity, the existence, source or content" of any of the Confidential and Proprietary Information to which she necessarily became privy.  (Miceli Aff., ¶ 22).  *See also* Ex. "A", ¶ 1. SCOPETTO further agreed not to "use or exploit" any of that Confidential and Proprietary Information "except as may be expressly authorized" by TECHNOMEDIA in connection with her performance of services for TECHNOMEDIA.  *Id.*  Pursuant to the Agreement, SCOPETTO is prohibited from soliciting any of TECHNOMEDIA's existing or prospective customers for two years following the termination of her employment with TECHNOMEDIA.  (Miceli Aff., ¶ 23).  *See also* Ex. "A", ¶ 4.A.  SCOPETTO acknowledged in the Agreement that she would not "use, represent, promote, advertise, or disclose any of [TECHNOMEDIA's] projects or work to any person, group, or entity outside [TECHNOMEDIA], nor use any of [TECHNOMEDIA's] Proprietary Information for self-promotion or as part of [TECHNOMEDIA's] credits, portfolio, or marketing materials without the express written permission of TECHNOMEDIA."  (Miceli Aff., ¶ 24).  *See also* Ex. "A", ¶ 2.  SCOPETTO further acknowledged the reasonableness of the restrictions she

was agreeing to abide by under the Agreement.  (Miceli Aff., ¶ 25).  *See also* Ex. "A", ¶ 5. Finally, the Agreement expressly addresses the propriety of injunctive relief in the event of a violation by SCOPETTO.  (Miceli Aff., ¶ 26).  *See also* Ex. "A", ¶ 6.  SCOPETTO acknowledged that if she chose to violate the Agreement, TECHNOMEDIA would suffer irreparable harm and may appropriately seek injunctive relief against her.  *Id.*

On June 11, 2013, TECHNOMEDIA discovered that Defendant SCOPETTO had been communicating with TECHNOMEDIA's largest competitor, Electrosonic, Inc. ("Electrosonic").  (Miceli Aff., ¶ 27).  SCOPETTO had neither previously disclosed those communications to TECHNOMEDIA nor had she sought permission or authorization to engage in such communications.  *Id.*  It appeared to TECHNOMEDIA that SCOPETTO had potentially disclosed or offered to disclose TECHNOMEDIA's Confidential and Proprietary Information to Electrosonic as part of an attempt by her to obtain employment with Electrosonic.  *Id.*  In response to this disquieting situation, TECHNOMEDIA engaged undersigned counsel who notified SCOPETTO by letter that TECHNOMEDIA was immediately suspending her employment pending further investigation into her possible disclosure of its Confidential and Proprietary Information.  (Miceli Aff., ¶ 28).  SCOPETTO was requested to forward to TECHNOMEDIA all communications she may have had with Electrosonic including those in which SCOPETTO provided Proprietary Information to Electrosonic.  *Id.*  Defendant SCOPETTO failed to provide TECHNOMEDIA with any of the communications that took place between her and Electrosonic.  (Miceli Aff., ¶ 29).  She did, however, state via email on June 13, 2013, that she intended and agreed "to adhere to

BDH 552611 v2
2926977-000001

the lawful and enforceable terms of my Confidentiality and Non-Compete Agreement with Technomedia Solutions dated October 25, 2011." *Id.*

On June 14, 2013, SCOPETTO once again resigned from her employment with TECHNOMEDIA. (Miceli Aff., ¶ 30). At TECHNOMEDIA's request, SCOPETTO surrendered her company-issued laptop and IPhone. *Id.* After a review of these devices, it was determined that all data related to SCOPETTO's communciations, client contacts, marketing, and business generation efforts had been deleted contrary to TECHNOMEDIA's requests not to alter or erase this data. *Id.*

Upon resigning from TECHNOMEDIA, Defendant SCOPETTO accepted employment with Electrosonic. (Miceli Aff., ¶ 31). On or about July 2, 2013, SCOPETTO contacted numerous existing and prospective clients of TECHNOMEDIA, with whom SCOPETTO had first formed relationships while employed with TECHNOMEDIA, and told those clients by email (the "Solicitations") (1) that she had accepted a new position with Electrosonic in their New York City office; (2) that those clients should be sure to update their database with SCOPETTO's new contact information listed in an attached "v-card"; (3) that Electrosonic is an international audiovisual company with a staff of more than 450 people, and that it has offices in the United States (Los Angeles, New York, Orlando, Minneapolis), the United Kingdom (London, Edinburgh), Finland (Helsinki), Sweden (Stockholm), and Asia (Shanghai, Hong Kong), and operational headquarters in Burbank, California next to the major motion picture studios and entertainment companies; (4) that the aforementioned regional offices are strategically situated around major metropolitan areas to serve the local customer base the best way possible; (5) that Electrosonic's scope of

9

services included audiovisual system design consulting, audiovisual system engineering and project management, audiovisual system integration, control systems and programming, and service and preventative maintenance; and (6) that she looked forward to hearing from them soon.  (Miceli Aff., ¶ 31).  A true and accurate copy of SCOPETTO's email solicitation is attached hereto as Exhibit "B."  *Id.*

The services provided by Electrosonic, as highlighted by SCOPETTO in her Solicitations to TECHNOMEDIA's customers and prospects, all of whom she became acquainted with as a result of her employment with TECHNOMEDIA, are in direct competition with those services offered by TECHNOMEDIA.  (Miceli Aff., ¶ 32).  The following TECHNOMEDIA customers have confirmed that they received Solicitations from SCOPETTO: Universal Studios, Hard Rock Café International, Turner Construction, Lexington Design & Fabrication, Cumming Corporation, David Mexico Design Group, Forrec, Shawmut Design & Construction, Mace North America, Marriott Vacation Club, and the Nassal Company.  (Miceli Aff., ¶ 33).  Defendant SCOPETTO, while employed with TECHNOMEDIA, was assigned with generating new business and fostering relationships with each of these clients.  *Id.*  Upon information and belief, SCOPETTO has sent these Solicitations to every existing and prospective client of TECHNOMEDIA with whom she worked during her employment.  (Miceli Aff., ¶ 34).

Defendant SCOPETTO is now working for TECHNOMEDIA's largest competitor in the audiovisual services field and using TECHNOMEDIA's customer lists and contact information to solicit business from TECHNOMEDIA's existing and prospective clients with whom she developed relationships while employed by TECHNOMEDIA.  (Miceli

10

Aff., ¶ 35).  SCOPETTO's actions are a violation of the Agreement and have caused, and will continue to cause, irreparable harm to TECHNOMEDIA.  *Id.*

## II.      ARGUMENT

Pursuant to Local Rule 4.06(b), entry of a preliminary injunction is proper if Plaintiff TECHNOMEDIA shows: (1) a substantial likelihood that it will prevail on the merits; (2) it will suffer irreparable injury if the injunction is not issued; (3) the potential injury to it outweighs the possible harm to Defendant; and (4) the injunction is not adverse to the public interest.  *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171 and n.1 (11th Cir. 2002); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Carillon Imps., Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam).  Each factor is analyzed using a sliding scale that balances the other factors in light of the particular case.[1]  *Anheuser-Busch, Inc. v. A-B Distribs., Inc.*, No. 96-CV-241, 1995 WL 17108555, at *4-5 (M.D. Fla. Apr. 6, 1995).

**A.      There is a Substantial Likelihood that Plaintiff TECHNOMEDIA will Ultimately Prevail on the Merits of its Claims.**

As set forth in the Complaint, Plaintiff TECHNOMEDIA already has sufficient evidence that it will succeed on its claim against SCOPETTO for breach of the Agreement. The Court need not "find that the evidence positively guarantees a final verdict in [TECHNOMEDIA's] favor."  *Levi Strauss & Co.*, 51 F.3d at 985.  TECHNOMEDIA need only show it is *substantially likely* to prevail as to one or more of its claims.

---

[1] In considering a request for a preliminary injunction, the Court may rely on hearsay materials that may not be admissible to support an order of permanent injunctive relief "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'"  *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citations omitted).

The Agreement's non-solicitation provision, paragraph 4, is a restrictive covenant that constrains SCOPETTO as follows:

> During [SCOPETTO's] employment with [TECHNOMEDIA] and for a period of twenty-four (24) months immediately following the termination of [SCOPETTO's] employment for any reason whatsoever, [SCOPETTO] shall not, directly or indirectly, for his or her own account or for the account of others, solicit or accept orders for, or provide, products or services of a kind and nature like or similar to the products sold, or services performed, by [TECHNOMEDIA], from or to any party, which was a client or customer of [TECHNOMEDIA's] during [SCOPETTO's] employment, or which [TECHNOMEDIA] was actively soliciting to be a customer or client during the thirty-six (36) month period preceding the date upon which [SCOPETTO] leaves the employ of [TECHNOMEDIA]. Further, [SCOPETTO] shall not at any time, directly or indirectly, urge any customer or client, or potential customer or client, of [TECHNOMEDIA] to discontinue or not to do business, in whole or in part, with [TECHNOMEDIA].

*See* Ex. A, § 4.A.

Under Florida law, a party seeking to enforce a non-solicitation clause must prove: (1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the established interests of the employer. Fla. Stat. Ann. § 542.335. The statute defines "legitimate business interests" to include trade secrets, valuable confidential business information, substantial relationships with specific prospective or existing customers, customer goodwill, and extraordinary or specialized training. Fla. Stat. Ann. ¶ 542.335(1)(b). Further, Florida law requires courts to construe restrictive covenants "in favor of providing reasonable protection to all legitimate business interests established by the party seeking enforcement." Fla. Stat. Ann. § 542.335(1)(h). In addition, "[a] court shall not

12

employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract."[2]  *Id.*

"There is little question under Florida law that an employer has a legitimate business interest in prohibiting solicitation of its customers with whom the employee has a substantial relationship."  *North Am. Prods. Corp. v. Moore*, 196 F.Supp.2d 1217, 1228 (M.D. Fla. 2002); *see also America II Elec., Inc. v. Smith*, 830 So.2d 906, 907 (Fla. 2nd DCA 2002). More specifically, an employer has a legitimate business interest under the Florida statute where an employee gains substantial knowledge of his former employer's customers, their purchasing history, and their needs and specifications.  *Moore*, 196 F.Supp.2d at 1228.

Likewise, where an employer has invested considerable amounts of money and effort to develop and maintain the goodwill of its customers, it is entitled to protect this legitimate business interest.  *See Merrill Lynch, Pierce, Fenner & Smith v. Dunn*, 191 F.Supp.2d 1346, 1353 (M.D. Fla. 2002); *Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So.2d 268, 272 (Fla. 4th DCA 2006); *In re Jotan, Inc.*, 229 B.R. 218, 219 (Bkrtcy.M.D. Fla. 1998).

The evidence presented clearly shows that TECHNOMEDIA has established substantial relationships and goodwill with the entities known to have been improperly solicited by SCOPETTO through TECHNOMEDIA'S provision and offering of quality audiovisual services over the years to these entities as well as through the expenditure of much time and money directed towards fostering and maintaining those relationships and preserving that goodwill.  Consequently, the protection of these legitimate business interests

---

[2] Florida state substantive law applies to this case, as federal jurisdiction is based on the diversity of citizenship of the parties.  The Agreement also includes a choice-of-law provision specifying that it is to be governed by Florida law.  *See* Ex. A., ¶ 7.

BDH 552611 v2
2926977-000001

justify the Agreement's non-solicitation provision in the absence of which an unscrupulous former employee, such as SCOPETTO,  could use TECHNOMEDIA contacts, resources, relationships, and specialized training made available to her through her prior employment with TECHNOMEDIA to obtain unfair advantage on behalf of her new employer, Electrosonic, in actively soliciting TECHNOMEDIA's existing and prospective clients throughout the United States and overseas.   Without an enforceable non-solicitation agreement in place, SCOPETTO could do so with impunity to the detriment of TECHNOMEDIA and the benefit of its largest competitor.   Thus, the Agreement's prohibition on solicitation by SCOPETTO for a period of twenty-four (24) months "is reasonably necessary to protect the legitimate business interests justifying the restriction." *See* Fla. Stat. Ann. § 542.335(1)(c) and (d).

Having established that TECHNOMEDIA has legitimate business interests deserving of protection, it must now be shown that there is a substantial likelihood that TECHNOMEDIA will prevail against SCOPETTO on its breach of contract claim.   To establish a claim for breach of contract under Florida law, a plaintiff must prove: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *See, e.g., Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008).

Here, the evidence is quite clear that Defendant SCOPETTO has materially breached the terms of the Agreement, specifically paragraph 4.A., by directly soliciting business from TECHNOMEDIA's existing and prospective clients for the account of others, namely, Electrosonic.  As set forth *supra*, on or about July 2, 2013, Defendant SCOPETTO contacted numerous existing and prospective TECHNOMEDIA clients with whom SCOPETTO had

BDH 552611 v2
2926977-000001

formed a relationship while working for TECHNOMEDIA and informed them via e-mail (1) that she had accepted a new position with Electrosonic in their New York City office; (2) that they should be sure to update their database with her new contact information listed in an attached "v-card"; (3) that Electrosonic is an international audiovisual company with a staff of more than 450 people with offices in the United States (Los Angeles, New York, Orlando, Minneapolis), the United Kingdom (London, Edinburgh), Finland (Helsinki), Sweden (Stockholm), and Asia (Shanghai, Hong Kong), and operational headquarters in Burbank, California next to the major motion picture studios and entertainment companies; (4) that the aforementioned regional offices were strategically situated around major metropolitan areas to serve the local customer base the best possible way; (5) that Electrosonic's scope of services included audiovisual system design consulting, audiovisual system engineering and project management, audiovisual system integration, control systems and programming, and service and preventative maintenance; and (6) that she looked forward to hearing from them soon.  *See* Ex. "B".  *See also* Miceli Aff., ¶ 31.  The services provided by Electrosonic, as highlighted by SCOPETTO in her Solicitations to TECHNOMEDIA's customers and prospects, are in direct competition with those client services offered by TECHNOMEDIA. *See* Miceli Aff., ¶ 32.

When presented with a case factually similar to the case at bar, where the defendant sent an email to his former employer's customers informing them that he was no longer working for the plaintiff, but would be continuing to work in the transportation services sector, and providing them with his new contact information, this Court held that there was *strong evidence* that the defendant had breached the non-solicitation agreement at issue and

preliminary injunctive relief was appropriate under Florida law.  *See Schwend, Inc. v. Cook*, 8:05-CV-00458-SCB-TGW (M.D. Fla. 2005) (Report and Recommendation and Order adopting same attached hereto, collectively, as Exhibit "C").

"The focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business."  *North Am. Prod.* Corp., 196 F.Supp.2d at 1230-31.  The damage to TECHNOMEDIA's existing and prospective business relationships with the clients in question, as well as the erosion of TECHNOMEDIA's goodwill in the nationwide audiovisual entertainment sector, is immediate, irreparable, and not readily quantifiable such that injunctive relief is the only appropriate remedy.  *See Id.*

**B.    Plaintiff TECHNOMEDIA will Suffer Irreparable Injury if Preliminary Injunction is not Granted.**

"[D]irect solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined."  Fla. Stat. Ann. ¶ 542.33(2)(a).  Where a plaintiff sufficiently demonstrates that a former employee is contacting its customers, the presumption of irreparable injury attaches.  *See State Chem. Mfg. Co. v. Lopez*, 642 So.2d 1127 (Fla. 3d DCA 1994) (reversing trial court's denial of motion for temporary injunction and holding that former employee's contacting of plaintiff's customers created presumption of irreparable injury and 24-month non-solicitation provision was valid and enforceable as against former employee); *see also Sun Elastic Corp. v. O.B. Indus.*, 603 So.2d 516, 517 (Fla. 3rd DCA 1992) (former employee's direct solicitation of employer's customers created the presumption of irreparable injury and the enjoinability of same; "[C]ases holding that a trial court is

BDH 552611 v2
2926977-000001

*required* to enjoin the violation of a noncompetitive agreement which is reasonable as to its duration and geographical limitation remain directly applicable and controlling.")[3]

It cannot seriously be disputed that Defendant SCOPETTO has (1) taken a sales position (2) with TECHNOMEDIA's largest competitor (3) covering the same nationwide market and sector that she previously serviced while employed with TECHNOMEDIA, and is (4) marketing and advertising, on behalf of Electrosonic, the same services to TECHNOMEDIA's existing and prospective clients that are presently provided by TECHNOMEDIA. *See* Ex. "B". *See also* Miceli Aff., ¶¶ 27, 31. During her employment with TECHNOMEDIA, Defendant SCOPETTO received specialized training, had access to highly proprietary and confidential sales and client information, established personal relationships with representatives of TECHNOMEDIA's clients, using TECHNOMEDIA's money and resources, all of which she now wishes to exploit on behalf of Electrosonic.

***Irreparable injury in a situation such as this is presumed by statute and must be enjoined.*** *See* Fla. Stat. Ann. ¶ 542.33(2)(a); *see also North Am. Prods. Corp.,* 196 F.Supp.2d at 1230-31 *1228* (holding that "[t]he focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business…. plaintiff's argument that there is no irreparable harm because plaintiff's injuries, if any, are subject to a monetary judgment, is equally without merit and has been rejected by other courts, where, as here, there is a statutory presumption of

---

[3] "[T]he term 'irreparable damage' does not have reference to the amount of damage caused, but rather to the difficulty of measuring the amount of damages inflicted. Thus, an injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard." *Air Ambulance Network, Inc. v. Floribus,* 511 So.2d 702, 702-703 (Fla. 3rd DCA 1987). Thus, "the normal remedy is to grant an injunction…[t]his is so because of the inherently difficult, although not impossible, task of determining what damage actually is caused by the employee's breach of the agreement." *Air Ambulance,* 511 So.2d at 703 (quoting *Miller Mech., Inc. v. Ruth,* 300 So.2d 11, 12 (Fla. 1974)).

BDH 552611 v2
2926977-000001

irreparable harm.");  *U.S. Floral Corp. v. Salazar*, 475 So.2d 1305, 1306 (Fla. 3d DCA 1985) (noting that entry of temporary injunction is "favored remedy" for violation of non-compete agreement).

Both Florida law and the face of the subject Agreement acknowledge the irreparable harm arising and presumed by SCOPETTO's chosen course of action, and further immediate and irreparable harm - which cannot be adequately remedied in damages in an action at law - is and will continue to be suffered by TECHNOMEDIA as a result of Defendant SCOPETTO's breach of the restrictive covenants and terms contained in the Agreement.  *See* Ex. "A", ¶ 6; *see also* Fla. Stat. Ann. § 542.335(1)(j);  *America II Elec., Inc.*, 830 So.2d at 908 (Fla. 2d DCA 2002) (holding that party seeking to enforce a restrictive covenant by injunction need not directly prove that the defendant's specific activities will cause irreparable injury if not enjoined since a presumption of irreparably injury is created by the violation of the enforceable restrictive covenants).

"Immediate injunctive relief is the essence of [non-competition] suits and often times the *only* effectual relief.  It can truly be said in this type of litigation that relief delayed is relief denied."  *Capraro v. Lanier Bus. Prods., Inc.*, 466 So.2d 212, 213 (Fla. 1985) (emphases added), *superseded by statute as stated in Health Care Fin. Enters., Inc. v. Levy*, 715 So.2d 34 (Fla. 4th DCA 1998).  Here, TECHNOMEDIA is without an adequate remedy at law because Defendant SCOPETTO has already started working for its largest competitor in virtually the same sales position she occupied with TECHNOMEDIA, and is using the extensive training she received, and contacts she made, with TECHNOMEDIA to aid Electrosonic in the solicitation of TECHNOMEDIA's existing and prospective clients.  It

18

will, of course, take significant time, effort and expense for TECHNOMEDIA to fully discover and determine how many TECHNOMEDIA clients and prospective clients have been and will be solicited by SCOPETTO, and what harm will befall TECHNOMEDIA's relationships with its customers as well as its hard-earned goodwill and reputation throughout Central Florida and the United States.  Injunctive relief is the only means by which this irreparable harm to TECHNOMEDIA can be stopped before further damage is done to TECHNOMEDIA's substantial business relationships and customer good will.

**C.** **The Potential Injury to Plaintiff TECHNOMEDIA if the Preliminary Injunction is not Granted Outweighs any Potential Harm to Defendant SCOPETTO or Others if the Preliminary Injunction is Granted.**

The threatened injury to TECHNOMEDIA absent an injunction outweighs the injury that an injunction might cause Defendant SCOPETTO.  For the reasons stated *supra*, the injury to TECHNOMEDIA's substantial business relationships, and the good will that it enjoys, with its existing and prospective clients is significant, imminent, and irreparable. Any harm to SCOPETTO from an injunction, however, is minimal, nor is the Court allowed to consider economic or other hardship SCOPETTO might be caused as a result of the enforcement of the Agreement.  *See* Fla. Stat. Ann. § 542.335(g)(1) ("In determining the enforceability of a restrictive covenant, a court [s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought.")   SCOPETTO remains free to seek employment with TECHNOMEDIA's competitors.  What she is contractually and legally bound from doing, however, is to improperly solicit TECHNOMEDIA's existing and prospective clients for her own benefit

19

and the benefit of Electrosonic.  Whatever harm SCOPETTO suffers from such improper solicitations is harm of her own making.

**D.     A Preliminary Injunction is not Adverse to the Public Interest.**

Finally, a preliminary injunction will not disserve the public interest.  To the contrary, the public interest will be served by the granting of an injunction, for such relief will uphold and promote the validity and integrity of enforcement of legal and binding contracts within the state of Florida.  Further, the statutory limitation on the courts' ability to refuse enforcement on public policy grounds (Fla. Stat. Ann. § 542.335(1)(i)),[4] evidences and codifies the legislature's intent that the validity of restrictive covenants such as those in the Agreement be upheld and the restriction enforced.  *See Hilb Rogal & Hobbs of Fla., Inc v. Grimmel*, 48 So.3d 957, 961-62 (Fla. 4th DCA 2010).

**E.     Only a minimal bond is necessary to protect Defendant SCOPETTO's interests.**

Fed. R. Civ. P. 65(c) requires the movant to deposit a bond as security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The bond requirement of Rule 65(c), however, is appropriately waived in certain circumstances.  *See Baldree v. Cargill, Inc.*, 758 F.Supp. 704 (M.D.Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991) (district court has discretion to waive bond requirement imposed by Rule 65(c)). The factors to consider include the potential loss to the defendant due to the injunction, the hardship to the plaintiff

---

[4] Section 542.335(1)(i) provides that, "[N]o court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint."

BDH 552611 v2
2926977-000001

due to expense of the bond, and the impact of the bond on federal rights. *Johnston v. Tampa Sports Auth.*, 2006 WL 2970431, at *1 (M.D. Fla.) (citations omitted).

Based upon the plain and obvious nature of Defendant SCOPETTO's breach of the non-solicitation provision of the Agreement, and the unlikelihood of an injunction being wrongfully entered, TECHNOMEDIA respectfully submits that a very minimal bond, if any, is warranted under the circumstances.

## III.    CONCLUSION

For all the foregoing reasons, Plaintiff TECHNOMEDIA SOLUTIONS, LLC's Motion should be granted, and the Court should issue its order forthwith in a form similar to that submitted along with TECHNOMEDIA's Motion, along with all further relief to which TECHNOMEDIA may be entitled.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Bank of America Center
390 North Orange Avenue
Post Office Box 1549
Orlando, Florida 32802
Telephone:  (407) 422-6600
Telecopier:  (407) 841-0325
Counsel for Plaintiff TECHNOMEDIA
SOLUTIONS, LLC

By: /s/ Donald E. Christopher
          Donald E. Christopher
          Florida Bar No. 250831
          dchristopher@bakerdonelson.com

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

Morgan Scopetto
50 St. Peter Street, Unit M2
Salem, MA 01970

/s/ Donald E. Christopher
Donald E. Christopher

22