**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| TECHNOMEDIA SOLUTIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | CASE NO.: 6:13-CV-1061-CEH-GJK |
| ) | |
| -vs- ) | |
| ) | |
| MORGAN SCOPETTO, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION**

THIS CAUSE is before the Court on Plaintiff TECHNOMEDIA SOLUTIONS, LLC's ("TECHNOMEDIA" or "Plaintiff") Motion for Preliminary Injunction (the "Motion"). Upon consideration of the Motion, Plaintiff's Complaint, and the Affidavit of John Miceli, the Court hereby FINDS as follows:

**FINDINGS OF FACT**

1. Plaintiff TECHNOMEDIA has asserted a breach of contract claim for which injunctive relief is appropriate pursuant to Section 542.335(1)(j), Florida Statutes.

2. Plaintiff TECHNOMEDIA provides unique audio and visual services, maintenance, and media content to an international clientele. Since its formation in 2001, Plaintiff TECHNOMEDIA has spent significant time, money, and effort to establish and enhance its customer relationships and goodwill, resulting in an exponential growth of its business and the establishment of substantial relationships and goodwill with clients across

sectors as varied as retail, lodging and dining, theme parks, museums, performing arts centers, educational institutions, business and governmental offices and others.

3. Defendant SCOPETTO, who was Vice President of Business Development for TECHNOMEDIA until her resignation on June 14, 2013, was heavily involved in soliciting, marketing and generating business from existing and prospective TECHNOMEDIA clients. Her work at TECHNOMEDIA provided SCOPETTO with access to protected trade secrets of TECHNOMEDIA, including its proprietary pricing strategies, otherwise confidential lists of customers and prospects, and its unique procedures and processes for customizing and integrating audio and visual effects in a way uniquely pleasing to the various clients of TECHNOMEDIA and effective in influencing the customers and constituents of those clients.

4. Defendant SCOPETTO entered into a binding and enforceable Confidentiality and Non-Compete Agreement with her employer, TECHNOMEDIA, on October 25, 2011 (the "Agreement"), wherein she agreed not to solicit business from TECHNOMEDIA's existing and prospective customers for her personal benefit or the benefit of others for a period of twenty-four (24) months immediately following her termination of employment with TECHNOMEDIA.

5. After reassuring TECHNOMEDIA that she did not intend to violate the Agreement, Defendant SCOPETTO resigned from her employment with TECHNOMEDIA on June 14, 2013. Upon resigning, she immediately began working for Electrosonic, Inc. ("Electrosonic"), TECHNOMEDIA's largest competitor.

2

6. On or about July 2, 2013, contrary to her prior assurances, SCOPETTO began contacting numerous existing and prospective clients of TECHNOMEDIA. SCOPETTO had first formed relationships with these clients while employed with TECHNOMEDIA. She informed those clients by email (the "Solicitations") (1) that she had accepted a new position with Electrosonic in their New York City office; (2) that those clients should be sure to update their database with Ms. Scopetto's new contact information listed in an attached "v-card"; (3) that Electrosonic is an international audiovisual company with a staff of more than 450 people, and that it has offices in the United States (Los Angeles, New York, Orlando, Minneapolis), the United Kingdom (London, Edinburgh), Finland (Helsinki), Sweden (Stockholm), and Asia (Shanghai, Hong Kong), and operational headquarters in Burbank, California next to the major motion picture studios and entertainment companies; (4) that the aforementioned regional offices are strategically situated around major metropolitan areas to serve the local customer base the best way possible; (5) that Electrosonic's scope of services included audiovisual system design consulting, audiovisual system engineering and project management, audiovisual system integration, control systems and programming, and service and preventative maintenance; and (6) that she looked forward to hearing from them soon.

7. The Solicitations that Defendant SCOPETTO sent to TECHNOMEDIA's clients and prospects were calculated to induce those clients and prospects to do business with Electrosonic rather than TECHNOMEDIA.

## CONCLUSIONS OF LAW

8. The issuance of a preliminary injunction falls within the Court's sound discretion and should be granted only if Plaintiff TECHNOMEDIA has demonstrated: (1) a

substantial likelihood that it will prevail on the merits; (2) it will suffer irreparable injury if the injunction is not issued; (3) the potential injury to it outweighs the possible harm to Defendant; and (4) the injunction is not adverse to the public interest. *Cumulus Media, Inc. v. Clear Channel Commc'ns., Inc.*, 304 F.3d 1167, 1171 and n.1 (11th Cir. 2002); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam); *Noble v. Tooley*, 125 F. Supp. 2d 481, 485 (M.D. Fla. 2000); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F. Supp. 1512, 1513 (M.D. Fla. 1992).  Each of these factors must be analyzed using a sliding scale that balances each factor in light of the particular circumstances. *Anheuser-Busch, Inc. v. A-B Distributors, Inc.*, No. 96-CV-241, 1995 WL 17108555, at *4-5 (M.D. Fla. Apr. 6, 1995).

### Substantial Likelihood of Success on the Merits

9. To support the issuance of a preliminary injunction, the Court need not conclude that the evidence "positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Noble*, 125 F. Supp. 2d at 485.  The evidence now before the Court certainly warrants a finding that Plaintiff TECHNOMEDIA has sufficiently established a substantial likelihood of success on the merits of its breach of contract claim.

10. To establish its claim for breach of contract, Plaintiff TECHNOMEDIA has shown that Defendant MORGAN SCOPETTO ("SCOPETTO") has sought to undermine TECHNOMEDIA's legitimate business interests in maintaining its substantial relationships and goodwill with its existing and prospective clients.  Defendant SCOPETTO has breached

4

the non-solicitation provision in the Agreement, paragraph 4.A. which prohibits "for a period of twenty-four (24) months immediately following the termination of [SCOPETTO's] employment" the direct or indirect solicitation by SCOPETTO of business from entities that were TECHNOMEDIA customers, or which TECHNOMEDIA was actively soliciting to become a customer during the thirty-six (36) month period preceding SCOPETTO's termination of employment.

11.     Defendant SCOPETTO's email correspondence dated July 2, 2013, sent to TECHNOMEDIA'S existing and prospective clients constitutes solicitation in violation of the aforementioned provision of the Agreement.

12.     Plaintiff TECHNOMEDIA has therefore demonstrated a substantial likelihood of success on the merits of its claim for breach of contract under Section 542.335, Florida Statutes.

### Irreparable Injury

13.     Irreparable injury in a case such as this is presumed under Florida law. *See* Fla. Stat. Ann. ¶ 542.33(2)(a); *see also North Am. Prods. Corp.,* 196 F.Supp.2d at 1230-31 *1228* (holding that "[t]he focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business…. plaintiff's argument that there is no irreparable harm because plaintiff's injuries, if any, are subject to a monetary judgment, is equally without merit and has been rejected by other courts, where, as here, there is a statutory presumption of irreparable harm."); *U.S. Floral Corp. v. Salazar*, 475 So.2d 1305, 1306 (Fla. 3d DCA 1985)

(noting that entry of temporary injunction is "favored remedy" for violation of non-compete agreement).

14.     The evidence shows that Defendant SCOPETTO has (1) taken a sales position (2) with TECHNOMEDIA's largest competitor (3) covering the same market and sector that she previously serviced while employed with TECHNOMEDIA (4) soliciting and advertising services on behalf of Electrosonic to TECHNOMEDIA's existing and prospective clients which services are of the same type presently provided by TECHNOMEDIA.

15.     Defendant SCOPETTO's violation of the Agreement has created a presumption under Florida Statutes that Plaintiff TECHNOMEDIA will suffer irreparable harm to its business, reputation, good will, and sales.  The Court therefore finds that as a direct and proximate result of Defendant SCOPETTO's material breach of the Agreement, Plaintiff TECHNOMEDIA has and will continue to suffer substantial, incalculable, and irreparable harm if a preliminary injunction is not issued.  Plaintiff has no adequate remedy at law under the circumstances of this case.

**Balancing the Injury to Plaintiff Against the Potential Harm to Defendant**

16.     The evidence also shows that the threatened injury to Plaintiff TECHNOMEDIA absent a preliminary injunction outweighs any injury that the injunction could cause Defendant SCOPETTO.  Florida Statute § 542.335(1)(g)1 precludes this Court from considering any individual economic or other hardship Defendant SCOPETTO might suffer as a result of an injunction.

17.     Moreover, any harm to Defendant SCOPETTO from an injunction would be minimal.  Defendant can continue her employment with Electrosonic.  She can solicit

6

potential customers with a need for audiovisual services so long as they are not existing or prospective clients of TECHNOMEDIA.  Defendant SCOPETTO should not be allowed, however, to improperly profit from her deliberate and flagrant violation of the enforceable terms of the Agreement.  Her solicitations have been calculated to undermine and disrupt the legitimate and substantial business relationships that TECHNOMEDIA has with its existing and prospective customers.  Consequently, the threatened injury to Plaintiff absent an injunction outweighs any potential harm to Defendant caused by an injunction.

### The Public Interest

18. The issuance of a preliminary injunction in this case will not disserve the public interest.  The Florida statutory limitation on this Court's ability to refuse enforcement on public policy grounds (Fla. Stat. Ann. § 542.335(1)(i)),[1] evidences and codifies the legislature's intent that the validity of restrictive covenants such as those in the Agreement should be upheld and the restriction enforced.  *See Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel*, 48 So.3d 957, 961-62 (Fla. 4th DCA 2010).

Based on the foregoing findings of fact and conclusions of law, it is therefore ORDERED and ADJUDGED:

1. Plaintiff's Motion for Preliminary Injunction (Doc. ___) is hereby GRANTED.

---

[1] Section 542.335(1)(i) provides that, "[N]o court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint."

BDH 552610 v3
2926977-000001

    2.    All of the factors under Fed. R. Civ. P. 65(a) and Local Rule 4.06 that should be considered in granting a preliminary injunction have been satisfied.

    3.    Defendant SCOPETTO, along with all of her agents, servants, employers, supervisors, employees, and attorneys, and those other persons in active concert or participation with her who receive actual notice of this Order, are hereby enjoined from the following absent further order of the Court:

    a.    disclosing or transferring, directly or indirectly, to any other person or entity the source or content of any otherwise confidential information learned or obtained from Plaintiff TECHNOMEDIA or created by Defendant SCOPETTO as a result of her employment by TECHNOMEDIA; and

    b.    within two years of the date hereof, contacting any person or entity that has been a client or customer of Plaintiff TECHNOMEDIA at any time since May 2008 or any person or entity that TECHNOMEDIA has actively solicited to be its client at any time since June 14, 2010.

    4.    This injunction is conditioned on Plaintiff TECHNOMEDIA posting a bond in the amount of $_____ in order to protect Defendant SCOPETTO's interests should this injunction later be determined to have been improvidently granted.

DONE AND ORDERED in Chambers at Orlando, Orange County, Florida, this \_\_\_\_\_ day of _____, 2013.

                                                                                                         _____

                                                                                                         District Judge

BDH 552610 v3
2926977-000001