# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TECHNOMEDIA SOLUTIONS, LLC,    )
                               )
         Plaintiff,    )    CASE NO.: 6:13-CV-1061-Orl-36GJK
                               )
-vs-                           )
                               )
MORGAN SCOPETTO,               )
                               )
         Defendant.    )
_____ )

## PRELIMINARY INJUNCTION
## AND ORDER ON MOTION TO DISMISS

This cause is before the Court on Plaintiff Technomedia Solutions, LLC's ("Technomedia" or "Plaintiff") Motion for Preliminary Injunction (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 65.  Dkt. 9.  Defendant Morgan Scopetto ("Scopetto" or "Defendant") responded in opposition to the Motion ("Response") (Dkt. 16) and Plaintiff replied ("Reply") (Dkt. 22).  A hearing was held on the Motion on October 10, 2013.  For the reasons that follow, Plaintiff's Motion will be granted.  In this Order, the Court will also consider a Motion to Dismiss filed by Defendant Scopetto (Dkt. 34), to which a response was filed (Dkt. 36).

I.      BACKGROUND

A.      **Factual Findings**[1]

Plaintiff Technomedia is an Orlando, Florida-based limited liability company founded in 2001 with other offices in New York, Las Vegas, Los Angeles, and the United Kingdom. Dkt. 30, Second Amended Complaint ("Sec. Am. Compl.") ¶¶ 1, 8, 10; Dkt. 9-1, Affidavit of John Miceli ("Miceli Aff.") ¶¶ 2-3.   The company designs and provides audio and visual services as well as media content to an international clientele.   Sec. Am. Compl. ¶ 8; Miceli Aff. ¶ 3.   Its diverse clientele include well-known retail establishments, lodging and restaurant operators, theme parks, museums, performing arts centers, educational institutions, business and governmental offices.   Sec. Am. Compl. ¶¶ 8-9.

Defendant Scopetto is an individual currently residing in Salem, Massachusetts.   *Id.* ¶ 2.   She was hired by Technomedia in May 2008 in the company's Orlando office as a Sales Account Manager to generate sales and develop business through marketing efforts, a job that was previously performed primarily by Technomedia's founder and president, John Miceli.   *Id.* ¶¶ 11, 15-16; Miceli Aff. ¶¶ 2, 8; Dkt. 17-1, Affidavit of Morgan Scopetto ("Scopetto Aff.") ¶ 2.   Scopetto avers that her job at that time was to find new business for Technomedia and that she did not solicit business from Technomedia's existing customers. Scopetto Aff. ¶ 2.   She initially reported directly to Mr. Miceli.   Sec. Am. Compl. ¶ 15; Miceli Aff. ¶ 8.   In fact, in the first few years of Scopetto's employment with Technomedia, the company expended a significant amount of resources training and mentoring Scopetto as

---

[1] For purposes of the Preliminary Injunction, the Court has determined the facts based on the parties' submissions, including the pleadings, memoranda of counsel, affidavits, and exhibits filed with the Court.

she had no prior experience marketing audiovisual services, nor did she have either knowledge or technical expertise in this field.  Sec. Am. Compl. ¶¶ 11-14; Miceli Aff. ¶¶ 8-10.  Eventually, Scopetto's primary mission as Sales Account Manager was to identify specific new sales opportunities.  Miceli Aff. ¶ 12.  She did this by extensive networking.  *Id.*

Because of the time and resources which Technomedia expended in training Scopetto, when she moved to Virginia in October 2009 for personal reasons and asked Technomedia if she could continue her employment with them by working remotely, Technomedia agreed. Sec. Am. Compl. ¶ 16; Miceli Aff. ¶ 13.  Six months later, when Scopetto moved back to Orlando, also for personal reasons, Technomedia again accommodated her by allowing her to resume her employment with the company in its Orlando office.  *Id.*

Scopetto was promoted to Director of New Business Development in December 2010.  Sec. Am. Compl. ¶ 17; Miceli Aff. ¶ 14; Scopetto Aff. ¶ 2.  Although Scopetto maintains that this promotion was merely a change in her title, Technomedia contends that in this new position, Scopetto was tasked with increasing and diversifying Technomedia's revenue that was attributable to new business.  Sec. Am. Compl. ¶ 17; Miceli Aff. ¶ 14; Scopetto Aff. ¶ 2.  Specifically, Technomedia avers, Scopetto's focus became creating opportunities for the company through relationship development and targeted marketing of new prospects.  Sec. Am. Compl. ¶ 17; Miceli Aff. ¶ 14.

The next summer, in 2011, Scopetto resigned her employment with Technomedia to accept a job with a construction general contractor in Boston, Massachussetts, rejecting Technomedia's offer to continue working for the company in its New York market.  Sec. Am. Compl. ¶ 18; Miceli Aff. ¶ 15; Scopetto Aff. ¶ 2.  Scopetto contends that two months later, after several requests by Technomedia that she return to work for the company, she

agreed and returned in October 2011.  Scopetto Aff. ¶ 3.  Technomedia maintains that it was Scopetto who asked to be rehired and to support Technomedia's Northeast Market from her new home in Boston.  Sec. Am. Compl. ¶ 18; Miceli Aff. ¶ 15.  Technomedia states that it accommodated her for the third time by granting both requests.  *Id.*

Technomedia rehired Scopetto as Vice President of Business Development.  *Id.*; Scopetto Aff. ¶ 3.  In this new role, Scopetto was to have increased responsibilities and was to be afforded broader access to Technomedia's executive decision-making sessions, processes, and planning.  Sec. Am. Compl. ¶ 19.  Because her new role entailed increased exposure to the company's trade secrets and proprietary information, as a condition of her rehiring, Scopetto was required to enter into a new Confidentiality and Non-Compete Agreement ("Non-Compete Agreement") with Technomedia, which she executed on October 25, 2011.  *Id.* ¶¶ 4, 19, 22; Miceli Aff. ¶ 16; Scopetto Aff. ¶ 3; Mot., Ex. A ("Non-Compete Agrmt").  Scopetto denies that her job responsibilities materially changed from the responsibilities she had when she was previously employed by Technomedia.  Scopetto ¶¶ 3-4.  Technomedia maintains that in this new role, Scopetto was responsible for generating, soliciting, marketing, and nurturing business from Technomedia's existing and prospective client relationships.  Miceli Aff. ¶ 7.

The new Non-Compete Agreement extended the restrictions that were included in the original non-compete agreement Scopetto signed when she first joined Technomedia in May 2008.  Sec. Am. Compl. ¶ 19; Miceli Aff. ¶ 8; Scopetto Aff. ¶ 4; Dkt. 17-1, Ex. A, May 2008 Non-Compete Agreement ("2008 Non-Compete Agreement").  Specifically, in this new Non-Compete Agreement, Scopetto acknowledged that:

> In connection with the performance of any and all services, [Ms. Scopetto] acknowledges that [she] will have access to and will become familiar with various trade secrets and other confidential information of both [Technomedia] and its clients, including but not limited to the following: methods of operation, technical or nontechnical data, formulae, systems concepts and designs, financial data, general business information, know-how, **lists of actual or potential customers**, suppliers and resources, processes, templates, databases, software, pricing policies, business strategies, and any other secret or confidential matters relating to the products, sale, or services, all of which are referred to hereinafter as "the Proprietary Information."

*See* Non-Compete Agrmt ¶ 1 (emphasis added).   In light of Scopetto's access to this Proprietary Information, she agreed "not to disclose or transfer, directly or indirectly, to any person, firm or entity, the existence, source or content of any of [Technomedia's] Proprietary Information" to which she became privy or "to use or exploit any of [this] Proprietary Information, except as may be expressly authorized by [Technomedia]."  *Id.* ¶¶ 1.A, 1.B.

Scopetto further agreed not to:

> use, represent, promote, advertise, or disclose any of [Technomedia's] projects [o]r work to any person, group, or entity outside [of Technomedia], nor use any of . . . [Technomedia's] Proprietary Information for self promotion or as part of [Scopetto's] credits, portfolio, or marketing materials without the express written permission of [Technomedia].

*See id.* ¶ 2.  Finally, under the Non-Solicitation clause of the Non-Compete Agreement, Scopetto agreed:

> [d]uring [her] employment with [Technomedia] and for a period of twenty-four (24) months immediately following the termination of [her] employment [with Technomedia] . . . not, directly or indirectly, for . . . her own account or for the account of others, [to] solicit [business] from . . . any party, which was a client or customer of [Technomedia's] during [her] employment, or which [Technomedia] was actively soliciting to be a customer or client during the thirty-six (36) month period preceding the date upon which [she] leaves the employ of [Technomedia].

*See Id.* ¶ 4.A.  Scopetto denies reading this new Non-Compete Agreement before signing it, believing it to be the same as the agreement she entered into with Technomedia when she was previously employed by the company.  Scopetto Aff. ¶ 4.

Scopetto indicates that she later grew frustrated working for Technomedia because they were late giving her a bonus and then failed, without explanation, to give her the full amount of that bonus, and they also failed to promptly reimburse her for payments she personally made for work expenses.  *Id.* ¶¶ 5-7.  Additionally, Scopetto states that Technomedia originally approved, then later rescinded their approval for her to relocate back to Orlando.  *Id.* ¶ 7.

Meanwhile, on or about June 11, 2013, Technomedia discovered that Scopetto had been attempting to obtain employment with Technomedia's largest competitor, Electrosonic, Inc. ("Electrosonic").  Sec. Am. Compl. ¶ 29; Ex. B, May 6, 2013 Scopetto E-mail ("May 6 Scopetto E-mail); Miceli Aff. ¶¶ 27, 34.  Believing that Scopetto had possibly disclosed, or offered to disclose, Technomedia's confidential and proprietary information to Electrosonic in connection with her communications with them, Technomedia, through its counsel, notified Scopetto by letter that her employment with Technomedia was immediately suspended pending further investigation into her possible disclosure of this information.  Sec. Am. Compl. ¶¶ 29-31; Ex. C, June 11, 2013 Suspension Letter to Scopetto ("Scopetto Suspension Letter"); Miceli Aff. ¶¶ 27-28.  In that letter, Technomedia also requested that Scopetto provide Technomedia with all communications she may have had with Electrosonic to aid in its investigation.  Sec. Am. Compl. ¶ 31; Scopetto Suspension Letter; Miceli Aff. ¶ 28.  Scopetto denies discussing Technomedia's confidential information with Electrosonic.  Scopetto Aff. ¶ 7.  However, instead of providing the information Technomedia requested,

Scopetto sent an e-mail to Technomedia's human resources department, dated June 13, 2013, informing them that she had reviewed her suspension letter, that she intended to adhere to the lawful and enforceable terms of her Non-Compete Agreement, that she was resigning her employment with Technomedia on June 14, 2013, and that she had accepted employment with Electrosonic.  Sec. Am. Compl. ¶¶ 4, 32-33, 35; Miceli Aff. ¶¶ 7, 29-31; Scopetto Aff. ¶ 8, Ex. E, June 13, 2013 Scopetto Resignation E-mail ("Scopetto Resignation E-mail").  At Technomedia's request, Scopetto surrendered her company-issued laptop computer and iPhone.  Miceli Aff. ¶ 30.  A review of these devices revealed that all data related to Scopetto's communications, client contacts, marketing, and business generation efforts had been deleted contrary to Technomedia's requests that Scopetto not alter or erase that data. *Id.*

On June 18, 2013, Technomedia, through counsel, sent a letter to Electrosonic informing them that Scopetto had executed a Non-Compete Agreement with Technomedia, and provided Electrosonic with a copy of that agreement.  Sec. Am. Compl. ¶ 34; Dkt. 17-1, June 18, 2013 Letter to Electrosonic ("June 18 Electrosonic Letter").  Electrosonic, also through counsel, replied by letter dated the same day, assuring Technomedia that Electrosonic was "mindful of the terms and restrictions of . . . [Ms. Scopetto's Non-Compete] Agreement[,] . . . has discussed [such terms and restrictions with her][,] [and] has no intention of aiding or facilitating a violation by [her] of the lawful and enforceable terms of the Agreement."  Sec. Am. Compl., Ex. D, June 18, 2013 Letter from Electrosonic ("June 18 Technomedia Letter").

Technomedia subsequently discovered that Scopetto sent an email with the subject line "Morgan Scopetto New Contact Info" addressed to "Friends and Colleagues" on July 2,

2013, which informed them:  (1) that she was very excited to announce that she had accepted a position with Electrosonic in their New York City office; (2) that they should be sure to update their database with her new contact information at Electrosonic listed underneath her email signature and in an attached "v-card"; (3) of Electrosonic's website address; (4) that Electrosonic is an "[i]nternational [a]udiovisual [c]ompany with a staff of more than 450 people with offices in the [United States] (Los Angeles, New York, Orlando, Minneapolis), the [United Kingdom] (London, Edinburgh), Finland (Helsinki), Sweden (Stockholm), and Asia (Shanghai[,] Hong Kong)", and that its operational headquarters were located in Burbank, California "next to the major motion picture studios and entertainment companies"; (4) that Electrosonic's "regional offices are strategically situated around major metropolitan areas to serve the local customer base the best possible way"; (5) that Electrosonic's scope of services included audiovisual system design consulting, audiovisual system engineering and project management, audiovisual system integration, control systems and programming, and service and preventative maintenance; and (6) that she looked forward to hearing from them soon.  Motion, Ex. B, July 2, 2013 Scopetto E-mail ("Scopetto 'Friends and Colleagues' E-Mail"); Miceli Aff. ¶ 31.

Scopetto sent the above-referenced "Friends and Colleagues" E-Mail to at least eight of Technomedia's existing clients and at least three of its prospective clients.  Sec. Am. Compl. ¶¶ 36, 39; Miceli Aff. ¶ 33.  Scopetto had developed relationships with these clients solely through her employment at Technomedia as she was tasked with generating and maintaining business for Technomedia.  Sec. Am. Compl. ¶¶ 35, 37, 39-40; Miceli Aff. ¶¶ 31-34.

### B.     Procedural History

Although Scopetto maintains that her "Friends and Colleagues" E-Mail was merely an announcement that she had accepted a new position with Electrosonic, typical of those that were sent in her industry when someone changes employment, Technomedia believed that it constituted a solicitation of business from some of Technomedia's existing and prospective clients in breach of Scopetto's Non-Compete Agreement.  Sec. Am. Compl. ¶¶ 34-36; Scopetto Aff. ¶¶ 10-11.  Accordingly, Technomedia filed its original Complaint in this Court seeking injunctive relief against Scopetto pursuant to that Agreement.  *See* Dkt. 1; Non-Compete Agrmt ¶ 6 ("[Scopetto] agrees that should . . . she violate any of the terms or conditions of this Agreement, [Technomedia] may apply to a court of competent jurisdiction for and obtain an order enjoining any further violations").  The operative complaint in this matter is now the Second Amended Complaint, which, like the original Complaint, seeks injunctive relief for breach of the Non-Compete Agreement (Count I), as described above, and is brought pursuant to Section 542.335 of the Florida Statutes.  *See* Sec. Am. Compl. Subsequently, Technomedia filed the instant Motion for Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65(a) and Local Rule 4.06.

Additionally, Scopetto filed a Motion to Dismiss the Second Amended Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).  *See* Dkt. 34.  A response was filed by Technomedia in opposition to the motion to dismiss.  Dkt. 36.

## II.    STANDARD OF REVIEW

A district court may issue a preliminary injunction where the moving party demonstrates: (1) a substantial likelihood of success on the merits; (2) that irreparable injury

will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Id.* (internal citations and quotations omitted). "The purpose of … a preliminary injunction is 'merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *United States v. Lambert*, 695 F.2d 536, 539-40 (11th Cir. 1983) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). In considering a request for a preliminary injunction, the Court may rely on hearsay materials that may not be admissible to support an order of permanent injunctive relief "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citations omitted).

## III.    ANALYSIS

At issue in this case is Scopetto's alleged breach of the non-solicitation clause in the Non-Compete Agreement. This matter is before the Court on diversity of citizenship jurisdiction and there is no dispute that the choice of law applicable here as specified in the Non-Compete Agreement is Florida law. Sec. Am. Compl. ¶ 3; Non-Compete Agrmt ¶ 7.

### A.    Preliminary Matters

#### 1.    *Scopetto's Motion to Dismiss*

The Court will first address Scopetto's Motion to Dismiss as it has bearing on whether consideration of Technomedia's Motion is appropriately before this Court.

a.    <u>Subject Matter Jurisdiction</u>

Scopetto contends that Technomedia has pled insufficient monetary damages to satisfy the amount in controversy requirement of more than $75,000.00 in order to invoke diversity of citizenship jurisdiction because it has failed to provide a factual basis for such allegation.  Dkt. 34 at n.1, ¶¶ 2, 8, 10-11,13.  Specifically, Scopetto avers that Technomedia alleges that it has sustained damages, yet only seeks an award for injunctive relief and attorneys' fees.  *Id.* ¶¶ 1, 4, 6.  Because Technomedia fails to specify the monetary value of the benefit that would flow to it if the injunction were granted, Scopetto submits that the Second Amended Complaint must be dismissed.  Dkt. 34 at 14; *see Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) ("the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.").   Scopetto also contends that Technomedia's statement that it "reasonably anticipates having to spend over $100,000 in attorney[]s['] fees" in this matter is speculative and uncertain.  *Id.* ¶ 8.

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "'A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* at 1232-33 (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond County,* 501 F.3d 1244, 1250 (11th Cir. 2007)).  Scopetto argues that the "Second Amended Complaint is facially deficient."  Dkt. 34 at 9.

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.  . . .  [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . the suit will be dismissed."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938).  "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."  *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).

Facially, Technomedia has alleged that "[t]he amount in controversy well exceeds $75,000.00," that if Scopetto is not enjoined from soliciting Technomedia's customers in breach of the non-solicitation clause of her Non-Compete Agreement, Technomedia will lose at least hundreds of thousands of dollars, and up to millions of dollars, in projected revenue over the next two years, and that it reasonably anticipates incurring over $100,000 in attorneys' fees and costs to enforce its rights against Scopetto in its breach of contract action. Sec. Am. Compl. ¶¶ 3, 30, 38-39, 46-47.  Even without including the alleged attorneys' fees in the amount in controversy evaluation, the Court finds that Technomedia's allegations are facially sufficient to satisfy the amount in controversy requirement for diversity jurisdiction. Additionally, the Court could take the alleged attorneys' fees into account in this instance. "[T]he general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract."  *Federated*, 329 F.3d at 808 n. 4 (citing *Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981)).  Here, Technomedia's breach of contract claim is based on Scopetto's Non-Compete Agreement, which clearly provides that,

"[i]n the event either party seeks to enforce any provision of this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorney[]s['] fees including fees and costs incurred in advance of filing suit and fees and costs on appeal." *See* Non-Compete Agrmt ¶ 7.   There is no claim that Technomedia's allegations concerning the amount in controversy were not made in good faith, and it does not appear to a legal certainty that Technomedia's claim is for less than the jurisdictional amount.   Accordingly, Scopetto's attempt to dismiss Technomedia's Second Amended Complaint on this basis must fail.

b.      Failure to State a Claim

Scopetto also argues in her Motion to Dismiss that Technomedia has failed to identify what constitutes the breach that supports its claim for breach of the Non-Compete Agreement.  Dkt. 34 at 19.  However, Scopetto acknowledges that the alleged breach is based on the "Friends and Colleagues" E-Mail that Scopetto sent to at least some of Technomedia's clients, which Technomedia argues was a solicitation in breach of the non-solicitation clause of the Non-Compete Agreement.   Dkt. 34 ¶ 3, p. 19.   Scopetto goes on to argue that this email was not a solicitation, citing *Charles Schwab & Co., Inc. v. Nicholas Carr*, Case No. 2:11-CV-00184-36DNF at 1-4 (M.D. Fla. May 17, 2011) and others, all cases that the Court analyzes below with respect to Technomedia's Motion.  *Id.* ¶ 3, p. 20.

Scopetto's attempt to dismiss Technomedia's Second Amended Complaint on the basis of failure to state a claim for the above-mentioned reasons must also fail.  To survive a motion to dismiss, a pleading must merely contain a "short and plain statement of the claim showing that the pleader is entitled to relief" as well as sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678 (citation omitted).

Technomedia has alleged that Scopetto's "Friends and Colleagues" E-Mail constituted a solicitation of its clients in breach of her Non-Compete Agreement.  As this Court concludes below in its analysis of Technomedia's Motion, Technomedia has a substantial likelihood of succeeding on its claim that this email does, indeed, constitute a solicitation.  Regardless, at the motion to dismiss stage, the Court must accept Technomedia's allegations as true, *i.e.*, that the email was sent to its clients and that it constituted a solicitation.  After a review of the email's contents, as detailed *supra*, the Court concludes that the email is sufficient, at this motion to dismiss stage, to support Technomedia's breach of contract claim.  *See* § I.A. at 7-8, *supra*.  Additionally, the Court finds that Technomedia has adequately alleged damages, as detailed more fully herein.  Dkt. 34 at 21.

Finally, Scopetto's claim that the Second Amended Complaint should be dismissed because the restrictive covenant in her Non-Compete Agreement is overbroad has no merit.  *See* Dkt. 34 at 23-24.  The appropriate remedy for a restraint that is overbroad is for the Court to modify such restraint and grant only the relief reasonably necessary to protect the established legitimate business interests alleged by the plaintiff, interests that the Court has determined to be sufficiently established by Technomedia, as noted below.  *See* Fla. Stat. § 542.335(1)(c).

14

2.      *Whether Technomedia Breached the Non-Compete Agreement*

In her Response to Technomedia's Motion, Scopetto contends that Technomedia materially breached the Non-Compete Agreement by failing to pay her compensation that she was owed under her employment contract and that, therefore, she has no further obligation under that contract and Technomedia cannot obtain an injunction.  Resp. at 7; s*ee North Am. Prods. Corp. v. Moore,* 196 F. Supp. 2d 1217, 1224 (M.D. Fla. 2002).  Specifically, Scopetto avers that Technomedia failed to pay her a bonus to which she was entitled in a timely manner, and failed to pay $8,000 of that bonus money.  Resp. at 8. Scopetto further contends that Technomedia failed to timely reimburse her for work expenses that she placed on her personal credit card, thereby causing her credit score to drop by over 100 points.  Resp. at 8; Scopetto Aff. ¶¶ 5-6.  Scopetto maintains that she made repeated requests for this payment to no avail.   Scopetto Aff. ¶ 5.

Once Scopetto brings forth evidence of Technomedia's material breach of the employment contract, the burden is on Technomedia "to demonstrate the likelihood of success on the merits as to this issue."  *Bradley v. Health Coal., Inc.*, 687 So. 2d 329, 333 (Fla. Dist. Ct. App. 1997).  "A party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible."  *Id.*

The purported "employment agreement" at issue here is an email that Technomedia's president, John Miceli, sent to Scopetto welcoming her back into the company when she was re-hired in October 2011.  *See* Scopetto Aff., Ex. C.  First, Scopetto has not established that this email constituted an employment agreement.  The subject line is "Outline," which is reiterated in the actual body of the email followed by a list of bullet points concerning what

she could anticipate in terms of her salary and bonus, car allowance, where she would work, her title, her general responsibilities, a budget that would be established, and so on.  Facially, it appears to be exactly what it is labeled – an outline – instead of an actual employment agreement.  Additionally, the email does not specify the exact amount of her bonus, besides a $5,000.00 welcome back bonus, nor does it specify when this bonus would be due.  Moreover, the email makes no mention of any obligation that Scopetto would have to pay for work expenses on her personal credit card, nor does it provide any details regarding when she should expect any reimbursements.

Second, Scopetto has not established that her obligations under her Non-Compete Agreement are dependent on Technomedia's timely payment of any bonus or expense reimbursements due her.  *See, e.g., Suave Shoe Corp. v. Fernandez*, 390 So. 2d 799, 800 (Fla. Dist. Ct. App. 1980) (the agreement that the plaintiff would provide the defendant with knowledge and training was not a dependent covenant which permeated the contract so that the failure to perform it would have constituted a breach of a principal part of the bargain).  Accordingly, it has not been established that the obligations under Scopetto's Non-Compete Agreement were dissolved by a breach by Technomedia.

*3.    Whether Technomedia Has Unclean Hands*

Scopetto also argues in her Response to Technomedia's Motion that Technomedia comes before this Court with unclean hands because it tried to interfere with her obtaining a job with Electrosonic by having its attorney send a letter to Electrosonic that made that company aware of Scopetto's Non-Compete Agreement.  *See* Resp. at 12; June 18 Electrosonic Letter.  Additionally, Scopetto contends that Technomedia contacted several individuals within the industry and made "false and slanderous statements" about her,

16

namely, that she had been "unprofessional and ugly" in her departure from Technomedia and that she "leaked proprietary company information to a competitor by email and phone and that [she] was violating [her] covenant not to compete." Resp. at 12; Scopetto Aff. ¶ 16.

Scopetto has not established how the June 18 Electrosonic Letter was an attempt to interfere with her obtaining a job with Electrosonic and her unsupported declarations of what certain people told her that Technomedia stated to them cannot possibly form the basis for dismissal under an unclean hands defense. To invoke the doctrine of unclean hands, a defendant must show "(1) that Plaintiff's wrongdoing concerned the Defendants and is directly related to the matter in the litigation; and (2) that Defendants were personally injured by Plaintiff's conduct." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346, 1355 (M.D. Fla. 2002). Scopetto has not established that Technomedia made any of the alleged statements or that the statements were false. In addition, she has not shown how she was injured by Technomedia's alleged conduct. For those reasons alone, Scopetto's unclean hands defense must fail.

**B.      Technomedia Has a Substantial Likelihood of Success on the Merits**

> *1.      Technomedia Has Established a Substantial Likelihood of Prevailing on Its Claim that the Non-Solicitation Clause in the Non-Compete Agreement is Valid and Enforceable*

The first factor in determining whether a preliminary injunction should issue is whether Technomedia can show a substantial likelihood that it will prevail on the merits of its claim. As noted above, Technomedia sets forth a single claim for breach of the Non-Compete Agreement and seeks to enforce one of the restrictive covenants found in that Agreement against Scopetto; namely, the non-solicitation provision. Based on the record

before the Court, Technomedia has demonstrated a substantial likelihood of success on the merits.

Section 542.335(1) of the Florida Statutes permits the enforcement of contracts restricting or prohibiting competition during or after the term of the restrictive covenant so long as such contracts are reasonable in time, area, and line of business.  *See* Fla. Stat. § 542.335(1).  First, Technomedia must prove that the restrictive covenant at issue is valid and enforceable.  *See GPS Industries, LLC v. Lewis*, 691 F. Supp. 2d 1327 (M.D. Fla. 2010). Under Florida law, a party seeking to enforce a restrictive covenant must prove: (1) "the existence of one or more legitimate business interests justifying the restrictive covenant"; and (2) "that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction."  *See* Fla. Stat. §§ 542.335(1)(b) and (c).

Here, Technomedia has established that it has legitimate business interests that justify the restrictive covenant in the Non-Compete Agreement.  "[L]egitimate business interests" include trade secrets, valuable confidential business information, substantial relationships with specific prospective or existing customers, customer goodwill, and extraordinary or specialized training.  Fla. Stat. § 542.335(1)(b).  Additionally, under Florida law, "an employer has a legitimate business interest in prohibiting [the] solicitation of its customers with whom the employee has a substantial relationship."  *North Am. Prods. Corp. v. Moore,* 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002).  More specifically, an employer has a legitimate business interest "[w]here an employee . . . gains substantial knowledge of h[er] former employer's customers, their purchasing history, and their needs and specifications." *Id.*

Technomedia contends that it has established substantial relationships and goodwill with the entities it has accused Scopetto of soliciting by providing audiovisual services to those entities over the years.   Mot. at 13.   Scopetto argues that Technomedia has failed to establish that it has legitimate business interests justifying the restrictive covenant because it has not proven the existence of any *specific* customer with whom it shares a substantial relationship.   Resp. at 8.   This is simply not correct.   Technomedia has identified several of its prospective and existing customers who received Scopetto's "Friends and Colleagues" E-Mail.   *See* Miceli Aff.   With respect to their existing customers from that list, Technomedia stated that it has well-established active, ongoing and substantial business relationships with them that are long-standing and that have resulted in millions of dollars in billed revenue realized by Technomedia.   *Id.*   Technomedia also stated that while Scopetto was employed with the company, she became actively involved in managing each of those clients' accounts and securing new business from them.   *Id.*   In the case of two of those clients, Technomedia avers that Scopetto became their primary point of contact when she was working for Technomedia. Sec. Am. Compl. ¶ 37.

With respect to the three prospective customers Technomedia identified as having been contacted by Scopetto through her "Friends and Colleagues" E-Mail, Technomedia avers that its relationship with one of them goes back more than ten years and that it has spent many months, and tens of thousands of dollars, pursuing pending business opportunities with all three of those prospective customers.   *Id.* ¶ 39.   Additionally, Technomedia states that while Scopetto was employed with Technomedia, she worked closely with each of these customers to generate further new business from them.   *Id.*   In the case of two of these prospective clients, Technomedia contends that Scopetto served as their

19

primary point of contact with Technomedia.  *Id.*  Technomedia has sufficiently established that it has a substantial likelihood of succeeding on its claim that it had a substantial business relationship with one or more specific existing or prospective customers and that Scopetto had a substantial relationship with one or more of those customers to justify its non-solicitation clause.

Technomedia has also established that its restraint is reasonably necessary to protect its legitimate business interests.  A plaintiff is entitled to protect the goodwill that it has established with its customers.  *See Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So. 2d 268, 272-73 (Fla. 4th Dist. Ct. App. 2006).  Florida law requires courts to construe restrictive covenants "in favor of providing reasonable protection to all legitimate business interests established by the [party] seeking enforcement."  Fla. Stat. § 542.335(1)(h).  Additionally, "[a] court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract."  *Id.*

Once the party has established a *prima facie* case that the restraint is reasonably necessary, the burden shifts to the opposing party to show that the restriction is "overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests."  Fla. Stat. §§ 542.335(1)(c).  "If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests."  *Id.*  If a covenant not to compete is facially reasonable, the burden shifts to the employee to show why the covenant is unreasonable as applied to her.  *See Orkin Exterminating Co. v. Martin*, 516 So. 2d 970, 971 (Fla. 3rd Dist.

Ct. App. 1987); *see also State Chem. Mfg. Co. v. Lopez*, 642 So. 2d 1127, 1128-29 (Fla. 3rd

Dist. Ct. App. 1994) (finding that there was no basis in the record to support the trial court's

finding that the two-year period in the agreement was unreasonable and the defendant failed

to meet his burden of showing that the term was unreasonable as applied to him).   It is the

obligation of the party contesting the covenant to plead unreasonableness as a defense or to

raise the issue at the hearing on the motion for temporary injunction.   *Orkin Exterminating

Co.*, 516 So. 2d at 972.

Technomedia states that it has spent much time and money fostering and maintaining

substantial relationships with the entities it has accused Scopetto of soliciting and preserving

the goodwill it has established with those entities, and that it is therefore entitled to protect

those relationships with a restrictive covenant.   Mot. at 13.   Over the past three years,

Technomedia contends, it has spent significant amounts of time and money creating

commercial goodwill and cultivating prospective business relationships with potential clients,

and it identifies seventeen of those clients.   Miceli Aff. ¶ 6.

In the case of a restrictive covenant to be enforced against a former employee, the

Court "shall presume reasonable in time any restraint 6 months or less in duration and shall

presume unreasonable in time any restraint more than 2 years in duration."   Fla. Stat. Ann. §

542.335(1)(d)1.   Here, the Non-Compete Agreement imposes a two-year non-solicitation

restriction on Scopetto.   In Florida, a two-year restriction has been considered reasonable on

its face.   *Sentry Ins. v. Dunn*, 411 So. 2d 336, 337 (Fla. 5th Dist. Ct. App. 1982) (holding that

a two-year restriction prohibiting the defendant from soliciting the plaintiff's customers was

reasonable); *Tomasello, Inc. v. de Los Santos*, 394 So. 2d 1069, 1072 (Fla. 4th Dist. Ct. App.

1981) (holding that a restriction not to compete for two years following termination of employment was facially reasonable).

The Court finds that Technomedia's two-year non-solicitation clause is facially reasonable.  No area limitation problems exist since the agreement merely prohibits Scopetto from soliciting Technomedia's customers.  There is also no restriction as to the line of business within which Scopetto may work.  She remains free to work for Electrosonic or any other employer and serve any other customers anywhere she wants.  Scopetto avers that there is no legitimate business reason justifying the two-year restraint in the 2011 Non-Compete Agreement when the restraint in the 2008 Non-Compete Agreement was only for one year.  Resp. at 13-14.   However, Scopetto does not deny that when she started working for Technomedia in 2008, she had no prior experience marketing audiovisual services or knowledge or technical expertise in this field, and that Technomedia spent a considerable amount of time and money in her first few years of employment training and mentoring her.  *See* Sec. Am. Compl. ¶¶ 11-14; Miceli Aff. ¶¶ 8-10.  Moreover, she does not deny that in her last role at Technomedia as Vice President of Business Development, she was afforded broader access to Technomedia's executive decision-making sessions, processes, and planning, and had increased exposure to the company's trade secrets and proprietary information.  Sec. Am. Compl. ¶¶ 4, 19, 22.  Accordingly, the Court finds no merit in Scopetto's contention that the two-year restraint in the 2011 Non-Compete Agreement is unreasonable as applied to her on this record.

Scopetto also argues that Technomedia's restrictive covenant is overbroad in that it seeks to prohibit Scopetto from (a) soliciting actual and prospective customers with whom she did not have substantial contact, and (b) soliciting prospective customers that never did

business with Technomedia but were solicited in the last three years.  Resp. at 9.  As to

Scopetto's first concern, the proper inquiry in determining whether the employer has a

protectable interest is on the relationship between that employer and its prospective and

existing customers; an employer need not prove that its former employee had a substantial

relationship with any particular customer.  *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp.

2d 1209, 1218 (S.D. Fla. 2005).  As to Scopetto's second concern, she will only be prohibited

from soliciting those Technomedia customers that Technomedia has established as

"legitimate business interest(s)" in accordance with Section 542.335(1)(b) of the Florida

Statutes, as provided to Scopetto in Technomedia's Existing and Prospective Customer Lists

Submitted to the Court Under Seal at Docket No. 44.

> 2.     *Technomedia Has Established a Substantial Likelihood of Prevailing*
> *on Its Claim of Material Breach of the Non-Solicitation Clause in the*
> *Non-Compete Agreement*

As the Court has determined that Technomedia has established a substantial

likelihood of demonstrating that the restrictive covenant at issue is valid and enforceable, the

Court now examines whether Technomedia has established a substantial likelihood that

Scopetto has breached this restrictive covenant in the Non-Compete Agreement.  *See* Sec.

Am. Compl.  To establish a claim for breach of contract under Florida law, a plaintiff must

prove: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages

resulting from the breach."  *See, e.g., Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla.

4th Dist. Ct. App. 2008).

As established above, the contract at issue here is Scopetto's Non-Compete

Agreement.  The parties dispute whether Scopetto breached that Agreement.  Technomedia

contends that she breached the non-solicitation clause of the Non-Compete Agreement by

23

emailing her "Friends and Colleagues" E-Mail to at least eleven of Technomedia's existing and prospective clients.  The Court finds that Technomedia has established a substantial likelihood of succeeding on this claim.

For instance, in *Schwend, Inc. v. Cook*, Case No. 8:05-CV-00458-T-24TGW, 2006 WL 752827 at 4 (M.D. Fla. July 23, 2005), the defendant left his job with an employer in the transportation services sector.  He then sent an e-mail to his former employer's customers with whom he had worked in the past: 1) informing them that he was no longer working for his former employer; 2) informing them that he would be continuing to work in the transportation services sector, listing fifteen states through which he would be "moving freight"; 3) providing them with his new personal contact information at which he could be contacted "24/7"; 4) informing them when he would be moving and where, that he would be setting up an office there, and when it was set up, he would be emailing those customers again to provide them with a new number and mailing address; and 5) that he hoped to still do business with them.  *Id.* at 4-5. After he sent that email, he started working for one of his former employer's direct competitors in the new location where he informed that employer's customers he would be moving.  *Id.* at 5.

The court held that, under Florida law, this email, along with the declaration of one of the plaintiff's clients that the defendant contacted them to solicit business and declarations by the plaintiff's employees that the plaintiff's customers told them that the defendant called them to solicit business, constituted strong evidence that the defendant had breached the non-solicitation provision of his non-compete agreement with his former employer and that preliminary injunctive relief was therefore appropriate.  *Id.* at 13-14.

Here, at least eight of Technomedia's existing clients and at least three of its prospective clients received Scopetto's "Friends and Colleagues" E-mail. The contents of Scopetto's e-mail constitute strong evidence that she was attempting to solicit business from Technomedia's existing and prospective clients to which the email was addressed for the account of her new employer. Scopetto has done substantially more in her email than merely inform Technomedia's clients of her new contact information. She made it a point to tell those clients that she was "very excited" to announce that she was now working for Electrosonic and she goes on to list a lot of detail regarding her new employer. She lists the exact services that Electrosonic provides. Technomedia's founder and president, John Miceli, has declared that these services directly compete with those services Technomedia provides to its clients. Miceli Aff. ¶¶ 31-32. Additionally, 1) Scopetto tells Technomedia's clients exactly how many employees Electrosonic has; 2) she not only informs Technomedia's clients of the exact Electrosonic office location where she will be working, but she lists *all* of Electrosonic's offices, both domestically and internationally; 3) she also makes it a point to specifically inform Technomedia's clients that Electrosonic's operational headquarters is in Burbank, California, that Burbank is in the Los Angeles area, and that this location is "next to the major motion picture studios and entertainment companies"; 4) she then informs Technomedia's clients about Electrosonic's *regional* offices, and that these regional offices "are strategically situated around major metropolitan areas to serve the local customer base the best possible way." Moreover, if Technomedia's clients were so inclined to learn even more about Scopetto's new employer than the above information provided in her email, they could simply click on the website address for Electrosonic that Scopetto included in the very first sentence of her email. Finally, Scopetto listed her new contact

information at Electrosonic both at the end of her email underneath her signature and in a "vcard" attached to the email, specifically directed Technomedia's clients to both of those sources of contact information, told them they should "be sure" to update their database with that new contact information, and that she looked forward to hearing from them soon.

The cases cited by Scopetto are inapposite.  For instance, in *Schwab*, Case No. 2:11-CV-00184-36DNF at 1-4, the court determined that an email sent to the employer's clients by two former employees who worked for that employer as financial consultants merely constituted an announcement email of their departure from the employer and thus did not violate the non-solicitation clause in the former employees' non-compete agreements. Moreover, the court determined that the FINRA ("Financial Industry Regulatory Authority ") standards of professional conduct specifically allowed for such announcements, and the Court cited a specific rule in support.  *Id.* at 5.  Here, Scopetto's "Friends and Colleagues" E-Mail was more than a mere announcement that she had left Technomedia.

In another case cited by Scopetto, *Neuberger Berman, LLC v. Strochak*, Case No. 05-80112-CIV-RYSKAMP/VITUNAC at 1, 4-5 (S.D. Fla. Feb. 22, 2005), the evidence showed that former employers of a broker-dealer informed their former employer's clients who their new employer was, discussed the services offered by their new employer in the same industry, and transferred those customers' accounts over to the new employer only in response to customer inquiries.  Otherwise, those former employees merely contacted those customers only to inform them that they were no longer working for the former employer. *Id.* at 5, 8.  The court noted that merely announcing that a financial planner has joined a new firm is not, in and of itself, a solicitation.  *Id.* at 8.  The preliminary injunction was denied

because there was no evidence of solicitation in violation of the former employees' solicitation clause in their non-compete agreements. *Id*. at 9.

Here, Scopetto has not demonstrated that her industry allows for any type of employment departure emails to a former employer's clients such as that allowed in the financial services industry.  Moreover, her email sent to Technomedia's customers, as noted, provided much more information than the fact of her departure and her new contact information.  The Court is unpersuaded by Scopetto's affidavit attaching an email by a former Electrosonic employee who had a non-compete agreement which announced that his new company was partnering with Technomedia and attaching a press release of that information.   Scopetto Aff. ¶ 11, Ex. I.  One email is not indicative of what is typical in an industry and the details concerning that former employee's non-compete agreement with Electrosonic are not before this Court.

Finally, "[t]he focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business."  *North Am. Prod. Corp.*, 196 F. Supp. 2d at 1230-31.  As such, Technomedia has averred that the damages resulting from Scopetto's breach of her Non-Compete Agreement by soliciting Technomedia's customers is not readily quantifiable because it constitutes an erosion to the business relationships and goodwill with its customers within the national audiovisual entertainment sector that it has developed over the years such that injunctive relief is the only appropriate remedy.  Mot. at 16.  The Court is satisfied that Technomedia has a substantial likelihood of establishing damages flowing from Scopetto's breach.

**C.     Technomedia Will Suffer Irreparable Harm if the Injunction Is Not Issued**

The second factor in determining whether a preliminary injunction should issue is whether Technomedia can show that it will suffer irreparable harm if an injunction is not issued.   Under Florida law, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement."    Fla. Stat. § 542.335(1)(j).  Furthermore, "direct solicitation of existing customers [is] presumed to be an irreparable injury and may be specifically enjoined."  *See* Fla. Stat. § 542.33(2)(a).  Thus, when a plaintiff has sufficiently demonstrated that the defendant was contacting its customers, irreparable injury is presumed.  *State Chem.*, 642 So. 2d at 1128 (holding that there is a presumption of irreparable injury in connection with the direct solicitation of a plaintiff's existing customers).

Additionally, it is not necessary for a company to have a contract with its customers in order to establish that the company has been or will be damaged by the solicitation of its customers.  *North Am. Prods.,* 196 F. Supp. 2d at 1231.  "[I]f a company was required to prove it had contracts with its customers as a prerequisite to preliminary injunctive relief[,] all businesses that sell products and services to their customers on a consistent basis without a contract would be precluded from protecting these relationships through non-compete and non-solicitation agreements."  *Id.*

Although Scopetto acknowledges that there is a presumption of irreparable harm if a violation of an enforceable restrictive covenant is shown, she maintains that Technomedia has failed to show such a violation.   Resp. at 6.   As the Court has concluded above, Technomedia has made such a showing.  This creates a presumption under Florida law that

Plaintiff Technomedia will suffer irreparable harm to its business, reputation, goodwill, and sales if Scopetto is not enjoined from such further solicitation.  The Court therefore finds that Technomedia has established a substantial likelihood of succeeding on its claim that it will be irreparably harmed if an injunction is not issued.

### D.    The Balance of Hardships Weighs in Favor of a Preliminary Injunction

The third factor in determining whether a preliminary injunction should issue is whether Technomedia can show that the balance of hardships weighs in favor of a preliminary injunction.   The evidence here demonstrates that the threatened injury to Technomedia absent a preliminary injunction outweighs any injury that the injunction could cause Scopetto.   The Court has determined that there is a substantial likelihood that Scopetto's "Friends and Colleagues" E-Mail constituted solicitation of Technomedia's customers.  Technomedia testified that it has received millions of dollars in revenue over the years as a result of the business relationships it has cultivated with its existing clients and has also spent significant amounts of time and money creating goodwill with its prospective customers.  Micelli Aff. ¶¶ 5-6.  Any unauthorized attempt to solicit a company's customers clearly interferes with that company's business relationships with those customers.  Thus, if Scopetto is not enjoined from further solicitation of those customers, Technomedia stands to have its reputation and goodwill with those customers substantially damaged, and have significant future revenue eroded.

With respect to Scopetto, first, the Court is precluded from considering any individual economic or other hardship she might suffer as a result of an injunction.  *See* Fla. Stat. § 542.335(1)(g)1.  Second, Scopetto can continue her employment with Electrosonic or work for any other employer she chooses.  She can solicit potential customers with a need for

audiovisual services, and in the same geographic market as Technomedia, as long as they are not existing or prospective clients of Technomedia's for a finite period of time, two years, a time period the Court has determined to be reasonable.  Even if the Court could consider Scopetto's individual economic hardship, the Court is unpersuaded by Scopetto's speculation that she could potentially lose her job or be unable to make a living in her industry if an injunction is issued, and that *if* that happens, she will be out of a job and severely damaged. *See* Scopetto Aff. ¶ 17.  Scopetto has provided no evidence that her current employer has threatened termination if a preliminary injunction is issued.  Quite the contrary, her current employer was put on notice by Technomedia that Scopetto was bound by a non-compete agreement and Electrosonic assured Technomedia that it was "mindful of the terms and restrictions of . . . [Ms. Scopetto's Non-Compete] Agreement[,] . . . has discussed [such terms and restrictions with her][,] [and] has no intention of aiding or facilitating a violation by [her] of the lawful and enforceable terms of the Agreement."  *See* June 18 Technomedia Letter.  Electrosonic was aware of the Non-Compete Agreement by at least June 18 of this year.  Consequently, the Court finds that, on this record, the threatened injury to Technomedia absent an injunction outweighs any potential harm to Scopetto caused by an injunction.

### E.      A Preliminary Injunction Will Serve the Public Interest

The last factor in determining whether a preliminary injunction should issue is whether Technomedia can show that the issuance of a preliminary injunction will not have an adverse effect on the public interest.  The Court concludes that the issuance of a preliminary injunction in this case will further the public interest.  Under Florida law, the public has an interest in the enforcement of restrictive covenants.  *See North Am. Prods.*, 196 F. Supp. 2d

at 1231. The injunction here will merely prohibit Scopetto from soliciting Technomedia's existing and prospective customers for a finite period of time. It does not prevent her from working for Technomedia's competitors or from using the intellectual capital that she has gained through years of training at Technomedia for the benefit of her new employer. Accordingly, the entry of a preliminary injunction here will advance the public interest and do nothing to adversely affect the public interest.

### F.     Bond

Pursuant to Federal Rule of Civil Procedure 65(c) and Section 542.335(1)(j) of the Florida Statutes, no preliminary injunction shall issue unless the person seeking enforcement of a restrictive covenant posts a bond sufficient to pay for costs and damages that may be incurred or suffered by any party who has been wrongfully enjoined. After due consideration, the Court finds that a bond in the amount of $250,000.00 is sufficient to compensate Scopetto in the event that a preliminary injunction was entered in error.

## IV.     CONCLUSION

Technomedia has met its burden as to the prerequisites for preliminary injunctive relief. Accordingly, it is hereby **ORDERED**:

1.     Defendant Scopetto's Motion to Dismiss the Second Amended Complaint (Dkt. 34) is **DENIED.**

2.     Plaintiff Technomedia's Motion for Preliminary Injunction (Dkt. 9) is **GRANTED**.

3.     All of the factors under Federal Rule of Civil Procedure 65(a) and Local Rule 4.06 that should be considered in granting a preliminary injunction have been satisfied.

4. Defendant Scopetto, along with all of her agents, servants, employers, supervisors, employees, and attorneys, and those other persons in active concert or participation with her who receive actual notice of this Order, are hereby enjoined from soliciting or accepting orders for, or providing, products or services of a kind and nature like or similar to the products sold, or services performed, by Technomedia, from or to any person or entity that has been identified by Technomedia in its Existing and Prospective Customer Lists Submitted to the Court Under Seal at Docket No. 44 for two years (twenty-four months), and are also enjoined from disclosing this list to anyone.

5. This injunction is conditioned on Plaintiff Technomedia posting a bond in the amount of $250,000.00. Plaintiff shall post a bond in the amount of **TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00),** or, in lieu of bond, Plaintiff may submit a cash deposit of $250,000.00 with the Clerk of Court for deposit into the Registry. The bond or cash deposit held in the Registry shall stand as security to recover any attorney's fees and damages incurred by Defendants in the event it is subsequently determined that the Preliminary Injunction should not have been granted. This injunction will take effect upon the posting of this bond. Plaintiff may, by motion, seek dissolution of this security and return of the cash deposit upon proper grounds.

**It is FURTHER ORDERED** that this injunction shall continue in full force and effect pending trial in this action or further order of the Court.

**DONE** and **ORDERED** in Orlando, Florida on this 13th day of December, 2013.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties